# LICENSE AGREEMENT

This License Agreement ("Agreement"), dated as of _____, is made by and between _____ with its principal offices at _____ ("Publisher"), and Napster, LLC with its principal offices at 28 West 44th Street, Suite 620, New York, NY 10036 ("Licensee") (both of the foregoing referred to as the "Parties").

WHEREAS, Licensee desires to offer to consumers, either directly or through third parties authorized by Licensee, certain digital music services that provide, among other services, digital transmissions of On-Demand Streams, Limited Downloads and Digital Phonorecord Deliveries.

WHEREAS, Publisher owns and/or controls and may hereafter own and/or control certain Musical Works (hereinafter sometimes referred to collectively as "Publisher's Catalog" as defined below); and Publisher desires to make Publisher's Catalog available to consumers by licensing such services;

NOW, THEREFORE, pursuant to 17 U.S.C. § 115 and other provisions of the United States Copyright Act, and in consideration of the mutual promises contained in this Agreement and for other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**1. Definitions**

1.1   "Digital Phonorecord Delivery" ("DPD") means such term as it is defined in 17 U.S.C. §115(d), i.e., completed digital transmissions of an entire Musical Work to a consumer where such transmission utilizes technology designed to cause the downloaded file to be available for permanent listening as recorded by the consumer.

1.2   "Effective Date" is _____.

1.3   "Licensee's Service" means a Licensee-authorized digital music service that delivers offerings to consumers (from servers located within the United States or its territories and possessions) including, but not necessarily limited to: on demand real time digital transmissions of sound recordings using so-called streaming technology ("On-Demand Streams"); and the making and distribution of sound recordings by digital transmission to local storage devices (e.g., the hard drive of a user's computer or portable devices) which may include either (i) time limited or use limited downloads ("Limited Downloads") and/or (ii) digital transmissions of sound recordings of Musical Works which result in permanent DPDs. It is understood that Limited Downloads may be distributed encrypted in physical form accessible only by authorized users by the digital transmission via Licensee's Service of the means to access such Limited Downloads.

1.4   "Musical Work" means such term as it is referred to in 17 U.S.C. § 102(2).

1.5 "Play" means either the transmission of a sound recording of a Musical Work via an On Demand Stream, or a playback of a sound recording of a Musical Work from a Limited Download, in each case of at least thirty (30) consecutive seconds in duration (excluding such Plays during free trial periods). Publisher's Catalog shall not be offered to end users disproportionately to other catalogs during any free trial periods.

1.6 "Publisher's Catalog" means the entire catalog of Musical Works now or hereafter directly or indirectly owned, controlled or administered by Publisher or any affiliate of Publisher, as such catalog shall exist from time to time during the Term of this Agreement solely as to the percentages and territories indicated on the attached Schedule "A". Schedule "A" shall also include the names and percentage ownership with respect to all other co-owners of each musical work, to the extent that Publisher possesses such information.

1.7 "Publisher's Proportionate Share" of any royalty pool hereunder means, for any accounting period hereunder, the total number of Plays (via On Demand Stream or Limited Download) made by subscribers of Licensee's Service consisting of Musical Works contained in Publisher's Catalog, <u>divided</u> <u>by</u> the total number of Plays (via On Demand Stream or Limited Download) of all Musical Works made by such subscribers.

## 2. Grant of License

2.1 Publisher hereby grants to Licensee, in connection with the operation of Licensee's Service, a nonexclusive license to use, transmit, perform, reproduce and deliver, through to the end user (including through Licensee's authorized distributors), the Musical Works contained in Publisher's Catalog, inclusive of the rights to make server reproductions, transmissions from servers, incidental reproductions in the streaming process and to facilitate local storage of the Musical Works in connection with delivery of On-Demand Streams, Limited Downloads and/or DPDs. Server reproductions made under this License to transmit On-Demand Streams, Limited Downloads and/or DPD's may also be used to make other transmissions; provided that the foregoing is without prejudice to any applicable requirement, if any, that Licensee also obtain a license for such other transmissions made using such server reproductions.

2.2 This Agreement includes the right to make, and there shall be no separate payment or accounting for the use of, promotional excerpts of sound recordings of Musical Works licensed hereunder, provided such excerpts are of no more than thirty (30) seconds duration (except that, in the case of sound recordings with a playing time of more than five minutes, the duration of such promotional excerpts may be up to the lesser of ten percent (10%) or sixty (60) seconds of the sound recording of the Musical Work involved); and (b) such promotional excerpts are limited to On-Demand Streams and Limited Downloads only.

2.3 Notwithstanding any other provision hereof, for all activities of Licensee that fall

within the scope of Section 115 of the United States Copyright Act, and without Licensee having to further serve or file a notice of intention to obtain a compulsory license otherwise required by the Copyright Act, Licensee shall have all rights and obligations of a statutory licensee (except to the extent expressly modified or supplemented by this Agreement) for the full term of copyright for the Musical Works contained in Publisher's Catalog that are first made available by Publisher during the Term of this Agreement.

2.4   If one or more other publishers own or control a partial interest in a Musical Work within Publisher's Catalog, this Agreement pertains only to that share that is owned and/or controlled by Publisher.  In such case, with respect to any share of the Musical Work involved that is not owned and/or controlled by Publisher, Licensee shall be responsible for securing any additional licenses to the extent (if at all) required by law and for accounting to each co-owner (or such co-owner's authorized payee) for such co-owner's share of the applicable Musical Work.

2.5   The territory of this agreement is limited to transmissions by Licensee to end users located in the United States and Canada (to the extent Publisher owns and/or controls rights in a Musical Work in Canada).

**3.   Limitations On Rights**

Any and all rights not granted or authorized by this Agreement are specifically reserved by Publisher.  Without limiting the generality of the foregoing, this license does not extend to activities not described above, including, without limitation, print or display rights, merchandising rights, adaptation (derivative work) rights except as provided in Section 115(a)(2) of the United States Copyright Act, rights to synchronize Musical Works with visual images resulting in audiovisual works, or karaoke rights, all of which rights are specifically reserved.  This Agreement does not grant to Licensee any trademark rights, or any rights to any endorsement by Publisher or any other person.

**4.   License Fees**

4.1   The license fees due to Publisher associated with Licensee's Service consist of what are commonly known as (i) "mechanical" royalties, licensable pursuant to Section 115 of the United States Copyright Act ("Section 115"), and (ii) "public performance" royalties, licensable either directly from Publisher or its affiliated performing rights organization ("PRO").

4.2   (A) Mechanical Royalties.  Upon a final non-appealable determination of applicable mechanical license rates as may be required for Licensee's Service (hereafter the "Section 115 Statutory Rate"), structured and determined through industry-wide negotiation and/or a Copyright Arbitration Royalty Panel ("CARP") proceeding pursuant to Section 115, Licensee shall pay to Publisher the Section 115 Statutory Rate for Licensee's Service in effect at the time Musical Works from Publisher's Catalog are digitally transmitted to a consumer.  If the Section 115 Statutory Rate applicable to Licensee's Service is thereafter

increased, then the royalty rate hereunder shall be so increased from and after the effective date of such increase.

(a) Until such time as there has been a final non-appealable determination of the Section 115 Statutory Rate as may be required for Licensee's Service, Licensee shall make "interim" fee payments to Publisher in accordance with subparagraph 4.2(c) below.  Notwithstanding the foregoing, with respect to transmissions to end users in Canada, the applicable rate will be that determined by the CMRRA-SODRAC Inc. On-line Music Service Tariff, 2005-2007 (the "CSI Tariff").

(b) Within 90 days of a final non-appealable determination of the Section 115 Statutory Rate or the CSI Tariff, as applicable, Licensee shall make the adjustment (if any) necessary such that Publisher receives the applicable final Section 115 Statutory Rate payment for all previous quarters then completed, retroactive to the launch of Licensee's Service.

(c) Pending the establishment of a final, non-appealable determination of the Section 115 Statutory Rate or the CSI Tariff, as applicable, Licensee shall pay Publisher, for the applicable accounting period, an interim mechanical royalty fee equal to the following:  (i) five percent (5%) of the amounts paid by subscribers for receipt of Licensee's Service ("Licensee's Revenues"), multiplied by (ii) a fraction, the numerator of which is the number of Plays of Limited Downloads and the denominator of which is the total number of Plays (whether via On Demand Stream or Limited Download), multiplied by (iii) Publisher's Proportionate Share.  The total amount of interim fees paid hereunder (the "Interim Section 115 Royalty" or the "Interim CSI Royalty," as applicable) shall be applied against the final Section 115 Statutory Rate royalties (or CSI royalties) owed to Publisher hereunder.  If such interim fees are not fully recouped at such time, any remainder of such payments thereafter shall be applied prospectively against all undisputed amounts owed to Publisher, provided that Licensee shall provide timely notice of any such dispute.

(d) Notwithstanding any other provisions of this section 4.2, relative to any other publishers that license mechanical rights directly to Licensee, Licensee agrees to treat Publisher on a "most favored nations" basis concerning Licensee's payment for mechanical license fees applicable to Licensee's Service.

(e) For the avoidance of doubt, payments and related obligations shall not be required to be made under this Section 4.2(A) in respect of uses of Musical Works for which payments are otherwise being made under another section of this Agreement (e.g., for the making and distribution of permanent DPDs). [fix]

(B) For the making and distribution of permanent DPDs, Licensee shall pay Publisher the statutory royalty rate under Section 115 (or the equivalent rate in Canada) applicable to such permanent DPDs in effect at the time such DPD is made and distributed; however, no royalty will be payable for DPDs not resulting

in a specifically identifiable reproduction of the entire sound recording by or for any transmission recipient.

4.3   Public Performance Royalties.  Licensee agrees to secure from the PRO (as set forth on the attached Schedule "A") with which Publisher is affiliated such public performance rights as shall be required by the activities associated with Licensee's Service and to pay directly to such PRO a public performance royalty for the applicable accounting periods in conformance with the terms of Licensee's agreement with such PRO.

4.4   Notwithstanding this Paragraph 4, no royalties shall be payable under this Agreement with respect to otherwise licensed Musical Works contained in Publisher's Catalog where Publisher or any third party authorized to grant such rights has granted directly to a sound recording licensor a license for rights to be utilized by Licensee's Service and where such license provides for accounting and payments directly to Publisher from such sound recording licensor for uses within Licensee's Service.  Notwithstanding anything in this Section 4.4, nothing in this agreement shall be deemed to entitle Publisher to, or require Licensee to pay, royalties more than once for any particular use of Musical Works on Licensee's Service.

4.5   In the event Publisher owns or controls less than one hundred percent (100%) of a Musical Work, Publisher's royalties as described above shall be credited with respect to such Musical Work in the same proportion as Publisher's actual percentage of ownership or control of such Musical Work as Publisher informs Licensee, provided, however, that in the event that such actual percentage of ownership or control is unknown or unavailable to Licensee or unresolved for any reason, Licensee may calculate Publisher's proportionate royalties for the unresolved portion of a Musical Work by dividing one (1) by the total number of identified publishers of such Musical Work.  For the purpose of clarifying this calculation, where Licensee has identified four (4) publishers of a Musical Work, the proportionate share of each such identified publisher with respect to the unresolved portion of the Musical Work will be deemed to be 25%  (1 / 4 = .25).

4.6   The royalties required to be paid under this Agreement with respect to Limited Downloads, On Demand Streams and/or DPDs received in countries where royalties are actually paid in connection with their importation, use or receipt in such territory shall be reducible by the amount of such royalties so paid to Publisher, sub-publisher or the local collection agent.

**5. Term**

The Term ("Term") of this Agreement commences on the Effective Date and ends three (3) years after said Effective Date and shall be automatically extended for successive periods (each a "Renewal Period") of one (1) years, unless terminated by either Party upon written notice of intention to terminate at least sixty (60) days prior to the end of the Term or any Renewal Period, whereupon this Agreement shall terminate at the end of

such Term or Renewal Period, as the case may be.

**6. License Fee Reports, Accounting and Payment**

6.1    Licensee shall issue all payments due to Publisher under this Agreement within 45 days after the end of each calendar quarter.

6.2    Simultaneously with its fee payments hereunder, including any interim fee adjustment required pursuant to Paragraph 4.2 herein, Licensee shall submit a license fee report to Publisher, with information indicating how the license fee due hereunder was calculated, including the number of Plays within Publisher's Catalog made during the period (via On-Demand Streams and/or Limited Downloads) and the total number of all Plays (via On Demand Streams and/or Limited Downloads) made by the Licensee's Service during the period as well as the total number of DPDs made and distributed hereunder during the period. Such license fee report shall be certified to be accurate by an officer or duly appointed representative of Licensee.

**7.        Verification of License Fee Reports and other Reports**

7.1    Publisher shall have the right, at Publisher's sole cost and expense, to examine Licensee's books and records directly relating to this Agreement, solely for the purpose of verifying the accuracy of any license fee report required by this Agreement and only as provided herein. Publisher may exercise this right no more than once per calendar year. Publisher may make such an examination for a particular report only once and only within three (3) years after the date any such license fee report is rendered as provided in Paragraph 6.1 above. Publisher shall give Licensee at least thirty (30) days' written notice of its intention to conduct an examination. Such examination shall be conducted by a representative experienced in music industry audits. Any such audit shall be conducted only during Licensee's usual business hours and at a place where it keeps the books and records to be examined. Licensee's books and records shall be kept by Licensee in accordance with Generally Accepted Accounting Principles and shall be retained for a minimum of at least three (3) years following expiration of the Term of this Agreement.

7.2    All license fee reports rendered by Licensee shall be conclusively binding upon Publisher and not subject to any objection by Publisher for any reason unless specific objection in writing, stating the basis thereof, is given to Licensee within three (3) years of the date such license fee report is rendered and an audit pursuant to Paragraph 7.1 is completed within twelve (12) months after such objection notice is given; provided, Licensee shall permit said audit to be conducted within said time period unless agreed in writing to the contrary by both Publisher and Licensee.

**8. Breach or Default**

Subject to the provisions hereof, the failure to perform any of the material terms or conditions required by this Agreement (unless otherwise authorized or permitted by law) constitutes grounds for termination of this Agreement.  Unless this Agreement otherwise expressly provides, the Parties agree that neither Party shall be deemed to be in breach of this Agreement until and unless the breaching Party fails to cure such breach within thirty (30) days of the non-breaching Party's written notice describing the alleged breach in reasonable detail.  No waiver by either Party of full performance by either Party in any one or more instances shall be a waiver of the right to require full and complete performance of this Agreement thereafter or of the right to terminate this Agreement.

**9. Security**

On-Demand Streams, Limited Downloads and/or DPDs made available through Licensee's Service shall conform to the governing security protocols and provisions in Licensee's agreements with sound recording copyright owners or under the applicable provisions of Section 114 of the United States Copyright Act.

**10. Representations and Warranties**

10.1   Publisher represents and warrants to Licensee that it has the rights necessary to grant each and all of the rights provided for under this Agreement and that Licensee's exercise of the rights granted to it under this Agreement will not infringe on any third party's rights.

10.2   Licensee hereby represents and warrants that Licensee has the right and power to enter into and fully perform this Agreement and to make the commitments Licensee makes herein.

**11. Indemnities**

11.1   Licensee will at all times indemnify and hold harmless Publisher, its Affiliates and any of their respective Publishers, and any officer, director and employee of Publisher (the "Publisher Indemnitees"), from and against any and all third party claims, damages, liabilities, costs and expenses (including reasonable legal expenses and counsel fees) arising out of (a) Licensee's use of Licensee's Service (except insofar as the use of Publisher's Catalog is in accordance with the grant of rights in this Agreement); and/or (b) any breach or alleged breach by Licensee of any representation, warranty or agreement made by Licensee herein.  Publisher shall promptly notify Licensee of any action arising out of Licensee's breach by the written notice thirty (30) days prior to the commencement so that Licensee may provide a cure.

11.2   Publisher will at all times indemnify and hold Licensee, Licensee's Affiliates and any officer, director and employee of Licensee ("Licensee's Indemnitees") harmless from and against any and all third party claims, damages, liabilities, costs and expenses (including reasonable legal expenses and counsel fees) arising

out of Publisher's breach of any representation, warranty or agreement made by Publisher herein.  Licensee shall promptly notify Publisher of any action arising out of Publisher's breach by written notice thirty (30) days prior to the commencement so that Publisher may provide a cure.

**12. Miscellaneous**

12.1   This Agreement shall be governed by, and construed in accordance with, the laws of the State California without giving effect to conflicts of law principles thereof.

12.2   Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provisions shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

12.3   This Agreement and course of dealing hereunder are intended to be inadmissible in any judicial or other administrative or arbitral (including CARP) proceeding of any kind for the purposes of establishing industry-wide royalty rates, and shall not be used by either Party (or any third party to this Agreement) to support any legal or other argument in any such judicial or other proceeding.

12.4   This Agreement may be modified or amended only by a writing signed by Publisher and Licensee.

12.5   All notices and other communications between the Parties hereto shall be in writing and deemed received (i) when delivered in person; (ii) upon confirmed transmission by facsimile device; or (iii) five (5) days after deposited in U.S. mails, postage prepaid, certified or registered mail, addressed to the other Party at the address set forth above (or such other address as such other Party may supply by written notice).

12.6   This Agreement expresses the entire understanding of the Parties and supersedes all prior and contemporaneous agreements and undertakings of the Parties with respect to the subject matter hereof.

12.7   This Agreement may be executed in counterparts, each of which shall be deemed to be an original but which taken together shall constitute one agreement.

12.8   Except as otherwise expressly provided herein, this Agreement and the rights and obligations hereunder shall be assignable or transferable by either Party; provided, that such assignee must agree to assume all obligations and rights of such party under this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

Publisher: _____    Licensee: **Napster, LLC**

By:_____              By: _____
An authorized signatory
                                         Title: _____
Title: _____

Federal Tax ID #: _____

Schedule A